Case number 24-1665, Fittima Howard v. Macomb County, MI. Argument not to exceed 15 minutes per side. Mr. Ellison, you may proceed for the appellant. Good morning. Good morning. Phillip Ellison appearing on behalf of Appellant Howard. I reserve three minutes for rebuttal. This case is probably going to be one of the shortest arguments I think I've made in a long time. I think Nick applies. Nick is the controlling law, not Nelson. The three lines I think that Chief Justice Roberts provided in Nick is directly applicable here. Chief Justice Roberts said in Nick that the Fifth Amendment does not say, nor shall private property be taken for public use without an available procedure that will result in compensation. He goes on to say, if a local government takes private property without first paying for it, that government has violated the Fifth Amendment, just as the Taking Clause says, without regard to subsequent state court proceedings. Did the court mention Nelson in Nick? The court did not mention Nelson in Nick. And it's one of the unfortunate aspects of Nick that I wish they would have dealt with it. But I think the court, at least as there's a couple of different ways we can deal with this, I think Nick is of course the last pronouncement from the Michigan Supreme Court and is the more specific one in these circumstances. In addition, even if we were to apply, and I have one more line from Nick, but I guess my point is that even if we were to assume Nelson survived Nick in some fashion, it can't survive here. Because in Nelson, there was at least a complete remedy that was provided, whereas in this circumstance, there's not a complete Fifth Amendment remedy. And in Nelson, I guess the way I see Nick in Nelson is there was a taking in Nick and not one in Nelson because of the procedure that was provided. But in order for that to be a valid, and if that's one way, admittedly that's one way that could be read that way, but the problem in this circumstance is not that if it's any procedure, it would have to be a Fifth Amendment compliant procedure. And what we have here is a procedure at best that only provides partial Fifth Amendment remedy. It doesn't pay back the full surplus proceeds. Yesterday, I was in the Wayside case that was being heard, I think at the end of the hall or sixth floor, and the discussion there was the hall in Freed established that there is an obligation that the surplus proceeds is a property right that can't be taken and has to be given back. So your point is the 5%? Is that what you're focused on? 5% and interest. Interest is a very important part of the Fifth Amendment remedy because under the Fifth Amendment jurisprudence, you have to pay at the time of the take. If you don't pay at the time of the take, the remedy for that, for violating the Fifth Amendment, is you have to then get damages for the value of that as well as interest. So just compensation is not just the surplus. Fifth Amendment just compensation, as that term is understood under the Fifth Amendment, is full property plus interest from the delay in payment, which we don't have. Your client counsel never pursued the process or the claims process, and so was not denied the 5%, was not subject to that procedure, I guess. So, I mean, is your argument that the 7080 is just unconstitutional? So 7080, I want to be very clear. I think the court, the most narrow grounds that the court can answer this question is, and it goes to my third point from Nick that I just could read to answer your question, is no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it. And Chief Justice Roberts goes on to say that you can go, that allows an individual to go directly into federal court. But what about Tyler? Tyler refers to Nelson and says the problem with the Minnesota scheme, unlike Nelson, was that there was not an opportunity to recover the excess value. So Nelson still exists. Nick was before Tyler. Tyler refers approvingly to Nelson. Why isn't the scheme that Michigan has enacted now compliant with the Supreme Court law when we're looking at all of these three cases and perhaps more? So to take a half step back and then a full step forward to answer your question, the half step back is my position is the 7080 process doesn't matter at all in these circumstances. My client can go directly to federal court under Nick and go forward. However, if you disagree, and that's going to the heart of your question. I had that in conflict with Tyler, but okay. But answer her question. That's what I'm going to say. That's my next step. The next question would be is assuming Nelson can you. Your first answer was your question was relevant to my perspective on the case. So answer the question. It's relevant to her perspective. That was what I'm going to get to. And I apologize. I didn't mean any disrespect by that. But my next point would be is assuming that Nelson still survives, it doesn't say that any process is appropriate. It has to be a Fifth Amendment compliant process. And here what the result is is that in a Fifth Amendment situation, the government is required to make the payment themselves. What they've done here is flipped Fifth Amendment on its head. They've done the very thing that Nick says you can't do, which is that you've created a process where the government says we don't have to pay unless you force us to pay. That's like Nelson. Nelson was is that when they came in, there was an automatic, at least as I read Nelson, and it's very, very light in details on what that process was under New York law. But as I read Nelson is that when a person came in and didn't pay their water bill and there was an amount left over, the court, as part of that same process, has to then pay that money back. It's no different, for example, I use the example in my brief about the 15 feet that's needed in the front of someone's house. Even if the property owner, the now former property owner, is no longer or doesn't participate in that case, they still get a check at the end of that process. Just compensation has to be paid no matter the procedure that's there. What 78T has done is flipped it on its head and says we will only pay you if the property owner, you invoke all the right processes and check all the boxes and do all the things. One thing that's a little puzzling is a lot of those processes are very property owner friendly. They're giving you options of whether we're going to sell it on the market, whether they're in an auction, whether they're going to buy it. It gives the property owner a lot of steps, including to pay it back and keep the property. Why is that such a bad idea from just a pure property ownership perspective? If your question is that can they pay it and get the property back, that is not how 78T works at all. At that process, you cannot buy back your own property. You cannot pay the debt to get your property back. It is going to an auction to be sold. Is it not true earlier in the process that you could do that? At the time when the foreclosure becomes finalized in March of 31. I'm obviously picking that up. My point is that if in a process that is supposed to result in the government is required to make the payment themselves, meaning they have to carry the ball and get it to the finish line where a check gets issued, 78T flips that on its head and says that the property owner has to do all of these things. Tell us the Fifth Amendment required world that each state has to follow. It is these facts. The person cannot pay. The way it should work is what? How should it work under the Fifth Amendment? Ignore state law. It is NIC. It is just federal law. It controls every little thing. If they are trying to avoid a 1983 subsequent lawsuit, which I think is the heart of your question, what is the county supposed to do in that circumstance to be Fifth Amendment compliant? I'm asking you what the Fifth Amendment requires. Just tell me what it requires. It would require them at the time of the foreclosure, they go to the sale. So they can foreclose. They foreclose. I have no problem with the foreclosure. They go to the sale. They can sell. There is no problem there. The county. If the county generates surplus proceeds, they have to give that surplus proceeds immediately back to the property owner directly. And they have to carry the process forward to effectuate that, not put the onus on the property owner to carry the ball to get payment. That's what NIC specifically tells us to do. So the way it would work, because you agree the prior stuff, before foreclosure requires lots of notice to the owner, right? Correct. And that's not in dispute here. They need all that chance. So what you're imagining is once you hit foreclosure, no more conversations, no more conversations about how you sell and whether you're yielding the best price. The county can actually do a terrible sale, so it's a low price. They have no involvement, and they don't get any more notice. You just do the sale, and the minute the sale happens, you write them a check if there's a difference. On Fifth Amendment grounds, yes. That would be the requirement. But what's happened here in 78T is that they've made the property owner responsible for filing a notice first, then filing the motion. I mean, there's all these steps that the property owner has to do. And the theory that the government has come back with is if the property owner doesn't follow our local procedure, they have waived or otherwise foregone their Fifth Amendment remedy. The thing that's puzzling to me, I don't know how the 5% works, and your friends on the other side can say what they have to say. Of course, that's about what the rest of us pay when we get someone to sell something for us. So it's not like it's out of nowhere. I mean, don't we want advertising? Don't we want the things that the 5% covers? I mean, would you agree the owner has to pay for advertising? Yes. However, the 78T process, I would point the court to a specific statute, 211.78, no parentheses, M sub 16. The entire cost of the sale, auction, advertising, and everything is paid by the buyer. They've already gotten that money back. So that 5% is just a profit motive for them at that point. So that's okay. And so, in other words, let's go to another state, another state that does that, but they put it into the scheme. So there's only one 5%. Yes. Is that okay? That's okay. They can charge advertising, and Nick would not allow a lawsuit immediately. Costs can be recovered in that respect, and they've recovered the cost here earlier in this case. And if they did it in some other fashion in another state, that's fine. Costs can be recouped. The problem here is that they're double-dipping in this one. Isn't your theory inconsistent with the idea that a county could have a foreclosure auction as opposed to selling at the best price that is available, a market value, that your client should be entitled to recoup market value minus the back taxes that weren't paid? Isn't that what your theory should be under your theory of Nick? I have argued in this court numerous times that it's the fair market value should be the basis of the Fifth Amendment calculation, but Hall and Freed have foreclosed that. The prior panels have ruled against me. What I'm focused on is once the sale occurs, the actual auction sale, and if it generates surplus proceeds at that point, that surplus proceeds has been held under Bowles, Freed, recently Pung, that that is a property right that the government then takes and is not giving back. And the government is saying, well, if you go through our process and you check all the boxes the right way, we will give you that money back. But that's inconsistent with the Fifth Amendment because as Chief Justice Roberts said, and that's where I started with this line, is the Fifth Amendment is not a guarantee that we'll give you your money back. One thing that Chief Justice Roberts did quite a bit in Tyler was talk about the history. You have not really talked about the history in terms of how this worked historically. And if it's true that historically these kinds of costs were thrust upon the property owner, wouldn't that undermine your argument? But the problem here is that they have grabbed the 5%. They say it covers the cost, but they've already been paid their cost. Well, we'll let them see what they have to say, but I'm just making the point. Do you agree if what they did is consistent with historical approaches to this problem? Doesn't that undermine your takings argument? It does not because in this particular instance, I can establish at trial that they were paid cost twice. If I could ask one more question. Yeah, go ahead. When do you contend interest starts to accumulate? Well, the legal answer is at the time of the take, and the next answer to when is the time of the take is when surplus proceeds were generated and not returned to the property owner. Thank you. Let's hear from the two folks on the other side. Good morning. Good morning, Your Honors. Frank Crescia appearing on behalf of Appalachia-Macomb County. I think it's clear Nelson applies, and Judge Ludington properly applied Nelson to this case. There was no take. What's your answer to the point you're double-dipping on cost? Why don't they have a fair point there? Because we're not. On this auction, the minimum bid is prepared before the auction. There was a $12 fee for the ad in the newspaper, which was one of the required ads, not the other things we do. There was a $20 fee for reserving the parcel in the auction on the website, and there was a $30 fee for recording the deed. So just to make sure I'm understanding, you've heard his argument. His argument is you do an actual cost one and then you just do a flat 5%, and he seems to be saying, I think he's definitely saying, the flat 5% has no connection to cost. Can you tell us the 5% does connect to cost, or what's your answer to his point? First of all, this wasn't raised in his complaint. But the 5% is I worked on this auction. We have teams. We have a full staff at the Treasurer's Office to handle the foreclosure. Several weeks before the auction and several weeks after, they are working on this auction. That time is not included. This property had significant fire damage. When we auctioned it, the first bidder backed out. The second bidder backed out. The third bidder backed out. We're the legal team. We're trying to enforce the bids. That time that we spent, this bid actually went down to $275. We had disputes. We had conferences with the bidders, and that's where it ended up. That time, but we managed to get $275 for the sale of this property. It took us weeks. The other thing we do is we process the money. The auction company is just like a website, so the property is on there. We handle everything else. We review the bids. We put all the information. We say advertising. We have a GIS system that the county pays for, and the GIS system is ____. What's the rationale separating out these costs? Am I getting it right that under one provision, you charge actual costs to the property owner, and the other is just 5%? Have I got it right so far? The legislature set this up, and the amicus can refer to that, but we do spend a significant amount of time on the foreclosure that is not in. The other thing is the minimum bid has to be determined prior to the auction so that we can post it and publish it. So we don't know the cost. We know we're going to incur costs, and there is significant costs. How about the interest point? The interest point is simple, Your Honor. We pay interest. You do pay interest. We pay interest. There is a provision. From what date? From the date of the ____. Let me explain real quick. Under Michigan law, and this is our opinion of Michigan law, which the treasurer adopted, when we are holding money, and we don't take the sale proceeds. We put them in a restricted account pursuant to the statute. That's 21178M, paragraph 8. We hold those. When somebody files the notice of intent to claim, we know that that's the claimant's money pending the court order. So it runs from the date of your getting notice? The date of getting the money in our account, which we're required to invest. The treasurer invests. So, for example, a few weeks ago. Just to make sure I'm understanding it, we know how this works, that they have to respond. So someone that actually does respond, let's say it's 30 days after the sale, they say, yeah, I'd like the difference. At that point, does interest run? Or does the interest run, now that they've notified you, does the interest run from the date of the sale? Date of the sale. The date we get the money. For example, in this case, we use date of sale, but in this case we didn't get the money for over two weeks because of all those disputes. So we go from date of sale based on the interest that that account earned. And I think there was what the state, the ruling, or the interpretation is under common law, since we're holding the claimant's money in the restricted account and earning interest on it, the interest follows the claimant's money. So, for example, recently we had a lady that was owed $100,000. And she filed the claim in pro per, by the way. There's a state court administrative form now for the motion. I notified her that one of the smaller lien holders filed the claim. She filed her motion three days later. No problems using this form in the system. She was owed $100,000, and we held the money for six months and approximately 4%. So that's around $2,000. So she gets a check for what the judge ordered the surplus is, plus the interest. And the interest is measured by? The rate of return on the account the money is held in. And that's what the Michigan courts under our interpretation, the treasurer adopted, is that interest follows the principle. What's the downside of a system in which you're argued a little more, not argued, but definitely more respectful of property owner rights, where you do everything you're doing, you're charging the way you're charging, but that they don't have to, it's not on them to hire lawyers or file notices that you obviously know who owned it because you've been collecting property taxes from them. And, I mean, it's obviously true if you can't find them, you have no obligation. But on the assumption you know where they are, why should they have to do anything? Well, Your Honor, the answer is we don't know because we get title work as to who the owner is several months before the foreclosure. We don't know if they transferred their interest. We don't know who they are. You know, we just have a name on a deed. But you've been giving them notice of the foreclosure. Based on that. But the notice of the reason is. I guess you use the same assumptions follow when you have the excess money. You drop down the person at that address because that's the address you used. If they're not there at that point, I agree. What more can you do? But more often than not, they will be at that address. And that's why you relied on it. In every system where we pay money, there should be required to avoid fraud. And I have seen fraudulent claims for surplus with mortgage surplus accounts. A simple form that says this is who I am, this is my interest in the property, and I still held this interest at the time of foreclosure. I don't understand how the fraud arises. You're dealing with someone before foreclosure. And the only reason there's fraud is if it's a new person after foreclosure. Or somebody impersonating that person. We never met. We foreclosed on thousands of parcels, by the way. And the judgment had 1,824 parcels in it. Now, we've only had contact with 866 of those people because they're the ones that the treasurer granted extension agreements on, including this parcel. So we had information on appellant, but we didn't have information on the other thousand in the judgment. And 52 properties went to sale out of that. So the treasurer managed to work with these people and resolve that. But we have collectors that go out and meet with some people. That's not a problem. But we're looking at a system that deals with all the people in the judgment. So forgive me if I don't understand the facts, but if the individual plaintiff here had filed the notice in the timely way, could she have asked for the ability to buy the property, to pay off the past taxes at that point, if she had filed the notice before the actual sale of the property? No, Your Honor. What the individual did is she actually lost the property, and the treasurer agreed to reinstate the redemption period and extend it to the end of May. So she had a signed agreement saying that. The treasurer gave her that, which is allowed by law. And then she breached the agreement by failing to pay at all. She was then sent a notice by the treasurer, if you wish to claim the surplus, return this notice form to my office by July 1st. And he sent that notice June 16th. So that's how the process works. What's the actual difference in this case between debt and yield? Well, there was two lien holders and Ms. Howard. Could you answer that question first? Yes. The difference I'd have to calculate, I think it was about $60,000. Okay. That's just my estimate. All right. We'll hear from your supporting party, I guess I'd say. Thank you, Your Honors. Thank you. Good morning. May it please the Court. Ted Seitz on behalf of AMICUS, the Michigan Association of County Treasurers. And I think we're in a unique opportunity to give some context to some of the Court's questions here today. Of course, the legislation that we're talking about, the act that came into place, 78T, was a response to our Supreme Court's and Michigan's decision in Raffaele versus Oakland County, where the Supreme Court asked basically for the legislature to fix this issue with the Michigan takings clause, which Michigan has viewed as being at least coextensive with the Fifth Amendment. And the Michigan Supreme Court, when it decided Raffaele, had an eye on Nelson. After the decision came down in July 2020, the legislature were not mere potted plants. This is a legislature that was not getting along at this time, but they got together on this issue and they created a process to deal with Raffaele. Let me ask you a question about the stage after foreclosure, they're now selling, and you hear what the appellant's claim is about how federal law works. How often is it the case that there's other interested entities? In other words, it's not just the property owner, but maybe a bank or two or a home equity loan. How often is that part of this? It happens more than one would think, Your Honor. And we've had five years' experience with this process now, basically ongoing on five years. And what we've seen is there are competing interest holders that make claims for properties, and sometimes it is a bank. Sometimes it's someone who had maybe a land contract on the property. Sometimes it is an estate with different, you know, the personal representative and other estate holders. So if the county did what the appellant wants, you'd have to work into it notice and time to make sure she's the only person with an interest in this. Yeah, that's correct, Your Honor. And that's why built into the legislation is for the county circuit judge, the one who actually worked on the foreclosure, is the one that views these interest claims or the competing interests, and they make a decision on who gets what. And they don't have a role in the foreclosure process? The circuit court does, yes. No, no, I'm talking about the banks and the home equity loans. They certainly are, to the extent they are discovered in the title search, they receive some sort of notice. And they also often, treasurers will call, you know, banks or they find other interest holders and say, hey, listen, this property is in arrears. It's been in arrears for taxes two years, and we're not getting any response. This is going to be foreclosed. So they don't really volunteer at that point because they're not psyched about an obligation. But it might be a different story when they hear there's excess. It could be, Your Honor. In the past, banks have come in and paid taxes that they know are due and owing if they don't want to lose the property. But then couldn't the bank foreclose if the bank has made a loan? They probably could, Your Honor, under their mortgage agreement. It would probably be a violation of the mortgage. How often they do that, I don't really know offhand, and that's changed over time, right? I mean, certainly. Wouldn't it depend on what the value of the property is? Yeah, that's absolutely right. Has value. And we're talking about a wide variety of properties here. I mean, we're talking about, you know, in Michigan, rural properties, maybe just a strip of land. There could be, you know, tracts of land. It could be a house or vacant property in the city of Detroit or another city. It could be a commercial property that's just kind of languished over the years. So a wide variety of properties. These are properties that people have not paid attention to, right, typically, with the taxes, oftentimes. You seem to know the legislation. In 2020, was there a preexisting cost recovery statute and then in 2020 they added this 5% or they had both in the new legislation? There was not, Your Honor. They added both at the same time. What were they thinking as to why the 5% flat fee when you already get actual costs? Yeah, a couple of things. So there was some costs that were certainly built into what I think McComb's counsel referenced as the minimum bid, and that's always been there. But the 5% was put in. It was, you know, put in actually, this legislation had unanimous support, and it was put, frankly, to some sort of cost recovery, but really to induce the treasurers and others to get the best auction price they can, almost acting like a real estate agent. It's 5% of the sale. Yeah, and there was actually a request by some entities that it should be higher. I don't really think of them as capitalists. Yeah, but that was the thought, and it was really kind of like a free market entity that said, you know, maybe it should be more than 5%. It should be 8% or 9% or 10% to really induce, you know, the treasurers, these local governmental units to get out there, market the properties, get as much as they can from them because they really are acting as a real estate agent. And if the holders of the property before would have sold the property on the market with a real estate agent, that real estate agent would have been entitled to some sort of price. So that was, I think, the reasoning, Your Honor, and I think that's in the record. Is interest, in fact, paid on this amount from the time of the foreclosure sale if somebody has made the claim that they want to get the surplus? You know, Your Honor, it's not required in the statute. So it doesn't say, you know, remaining proceeds is the way Michigan describes it in 78T. It doesn't say remaining proceeds plus interest. That's my view of the plain language of the statute. Now, having, and I'm sorry I'm over time, but having heard from McComb, and certainly this is true for several, you know, probably treasurers or more in the state, these are elected officials, they may themselves, you know, But there's no state statute that requires the payment of interest. Not within 78T, Your Honor. I suppose if, you know, you weaved in other statutory provisions, but we have not had a decision from any of our courts doing that in Michigan. And our courts have spoken to 78T or, you know, PA-256 is what it's called. But is the general rule what McComb County claims it's doing, which is doing it from the time of the sale? It could be, Your Honor, but there's no case law on that. That hasn't come out in any of the decisions at all. I'm asking their practices, not what they do. I would say it's hard to tell, Your Honor. We have 83 counties, 83 county treasurers. Some may do that. Many may do that. I don't know offhand, Your Honor. All right, thanks very much. Thank you. Appreciate it. Mr. Ellison, you've got some rebuttal. I want to be clear about the nature of my arguments here today. We're on a 12B-6 on a complaint that was brought, and the only question is does the existence of a process that flips the burden onto the property owner rather than simply issuing the check, does that act as a hard bar on a Fifth Amendment claim? I think the answer at this outset, at this posture, is the answer is no. Now, maybe some of these things we've been talking about today come into play later on as to whether you can prove a Fifth Amendment claim, but we're on a 12B-6, and the standard I believe that is applicable, and I've been clear about from the beginning, is that Nick says it doesn't matter what process is there. The thing that makes this hard is your client did nothing. It would be a lot easier to explore this, including the interest, if she'd done something. Then we'd actually have decisions, actions, and then you say, well, that's not compliant. That's the complication. That is a complication, but the problem is, the legal reality is, is that even if someone needs that 15, if the government needs that 15 feet in front of me, in front of my home for eternally, and I do nothing about that, I still get a check at the end of the condemnation process because, as Chief Justice Roberts, where I start back at is, it doesn't say you can take it without an applicable procedure that will result in compensation. It requires actual compensation. It requires the check to be issued. That's assuming that there is a taking, whereas under Tyler, there is not a taking if there's a process where someone can make their assertion that they want to be involved. But that's not what Nick said. I don't read that. So it's Nick versus Tyler, right? I think there is some. Tyler is later. Am I right? Both were written by Roberts? Both were written by Roberts. Both were written by Roberts. He got it clear in his mind. Perhaps. We'll certify the question. I certainly, the difficulty here is that, I mean, most of the folks that, first of all, and I also want to just, one other point real quick is, my experience, I've been with these cases for eight years. I'm the lawyer on Freed. It's my practice and understanding from the county standpoint, none of them pay interest. I was surprised to hear McComb was paying interest. That's new. I've never heard of that before. The counties don't pay interest on this. For what it's worth, this seems like a very good argument. For what it's worth, Camp, whether it's something we can do anything about here, I'm not so sure. But, again, because of that, the stage where we're at, we've alleged that there is a taking. There's been a property interest that Bowles establishes and Freed establishes and Tyler establishes that was taken and not paid. We would like the, and the argument here is 718 is an affirmative defense. That's how I kind of view this in my mind in this respect. At a 12B6 stage, the question is whether the complaint has pled enough to be able to get into the guts of the case itself. And what I believe is that this is prematurely been made to bar this particular claim and the court should not permit that to proceed. So I would ask for reversal. All right. Thanks. Thank you very much. All three of you for your helpful arguments. Excellent briefs. We really appreciate it. It's a tricky case. The case will be submitted and the clerk may adjourn court, please.